UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THERNELL SMITH

                              Plaintiff,

     v.                                                        99-CV-061

D. YANDO, Supervisor at Clinton Correctional
Facility, P. MINTZNER, Correctional Officer
Clinton Correctional Facility, CORRECTIONAL
FACILITY, and other unknown employees
of Clinton Correctional Facility and/or
New York State DOCS, L. DUQUETTE,
 Correctional Officer, Clinton Correctional
 Facility, R. HARNDEN, Correctional Officer
Clinton Correctional Facility

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

**I.        INTRODUCTION**

Plaintiff Thernell Smith, proceeding *pro se,* filed a complaint on January 15, 1999, pursuant to 42 U.S.C. § 1983 alleging that Defendants, five New York State Department of Correctional Services ("DOCS") employees, violated his constitutional rights.  Specifically, Plaintiff alleges that Defendants used excessive force and failed to intervene in violation of the Eighth and Fourteenth Amendments.  The complaint seeks compensatory and punitive damages.  Plaintiff moved for summary judgment pursuant to Fed. R. Civ. P. 56(b).  Certain Defendants cross moved for summary judgment pursuant to Fed. R. Civ. P. 56(b) on the grounds of lack of personal involvement.  On June 19, 2001, this Court adopted Magistrate

Judge Homer's March 8, 2001 Report and Recommendation recommending the denial of Plaintiff's motion for summary judgment and granting Defendant's motion to dismiss for lack of personal involvement of four Defendants. Defendants then moved for summary judgment pursuant to Fed. R. Civ. P. 56(b) based on Plaintiff's failure to exhaust administrative remedies. On February 12, 2003, Magistrate Judge Homer recommended granting Defendants' motion to dismiss the action on the ground that Plaintiff failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). Plaintiff failed to timely file objections to the report and this Court adopted the Magistrate Judge's recommendations on March 17, 2003. Plaintiff then moved for reconsideration. Upon reconsideration on June 18, 2003, this Court re-affirmed its adoption of the Magistrate's Recommendation and Order dated February 12, 2003 that Plaintiff failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). Plaintiff appealed.

On appeal, the Second Circuit vacated the judgment and remanded the case for further proceedings in light of the Second Circuit's decisions in Giano v. Goord, 380 F.3d 670 (2d Cir. 2004), Hemphill v. State of New York, 380 F.3d 680 (2d Cir. 2004), and Rodriguez v. Westchester County Jail, 372 F.3d 485 (2d Cir. 2004).

## II.   FACTS

On March 18, 1998, Correctional Officers P. Mintzner and D. Yando ordered Smith to prepare for a cell move. Am. Compl. at ¶ 13. Fearing an assault, Smith asked Yando to call the watch commander and to videotape the cell move. Id. at ¶ 14. Yando denied Smith's request and ordered him to exit the cell. Yando then assaulted Smith. Id. at ¶ 15. Smith

further alleges that Mintzner, DuQuette, and Harnden entered the cell after Yando and also assaulted Smith. Id. at ¶16-21.

In his amended complaint, Smith stated he never filed a formal grievance with the Inmate Grievance Resolution Committee ("IGRC") in accordance with 7 N.Y.C.R.R. § 701.7(a)(1). In his most recent brief, Smith contends he filed a formal grievance but then abandoned it to follow the informal grievance procedure under 7 N.Y.C.R.R. § 701.11. The record contains no formal grievance. The record does show that on April 2, April 3, and April 13, 1998, Smith wrote Facility Superintendent Senkowski complaining of the use of excessive force by DOCS employees on March 18, 1998 and requesting an investigation. Smith Aff. at Exs. H, J. On March 23, 1998, Smith wrote to DOCS Commissioner Goord, who referred Smith's letter to Deputy Commissioner George J. Bartlett. Id. at Ex. N. On April 7, 1998, Acting Superintendent Ricks referred Smith's complaint to J. Wood, Deputy Superintendent of Security. Id. at Ex. I. An investigation was then conducted on April 14, 1998 that included an interview of Smith by Lt. Brown. Id. at Ex. K. Senkowski informed Smith that a review of all available materials did not support his claim. Id. at Ex. K. Smith claims no one informed him he had to file a formal grievance with the IGRC in addition to sending written complaints to the Facility Superintendent.

III.    **DISCUSSION**

    a.    **PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies are exhausted." 42 U.S.C. § 1997e(a).  This exhaustion requirement applies to all prison condition claims, including retaliation and excessive force. Woodford v. Ngo, —U.S.—, 126 S. Ct. 2378, 2387 (2006); Porter v. Nussle, 534 U.S. 516, 532 (2002).  The exhaustion requirement applies even if the administrative grievance process does not permit money damages and the prisoner seeks only money damages. Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004); see also Woodford, 126 S. Ct. at 2382-83 ("[A] prisoner must now exhaust administrative remedies even where the relief sought – monetary damages–cannot be granted by the administrative process."); Booth v. Churner, 532 U.S. 731, 734 (2001).

In June 2006, the Supreme Court held that the PLRA requires "proper exhaustion" before a prisoner may proceed in federal court.  Woodford, 126 S. Ct. at 2387.  "Proper exhaustion" requires that a prisoner use "'all steps that the agency holds out, and doing so *properly*.'" Ruggiero, 467 F.3d 170, 176 (2d Cir. 2006) (citing Woodford, 126 S. Ct. at 2385) (emphasis in original).  The level of detail will vary from system to system.  Jones v. Bock, —S.Ct.—, 2007 WL 135890, at *12 (Jan. 22, 2007).  But exhaustion "'demands compliance with an agency's deadlines and other critical procedural rules.'"  Ruggiero, 467 F.3d at 176 (quoting Woodford, 126 S.Ct. at 2386).  Therefore, "untimely or otherwise procedurally defective attempts to secure administrative remedies" do not satisfy the PLRA's exhaustion requirement." Ruggiero, 467 F.3d at 176 (citing Woodford, 126 S. Ct at 2382).

At all times relevant hereto, DOCs had a formal inmate grievance program that provided inmates with a method of resolving grievances.  N.Y. Comp. Codes R. & Regs., tit 7, §701.1 (1999).  It is a three tier system.  The inmate's first step is to file a Level 1

Grievance (either an Inmate Grievance Complaint Form or plain paper if the form is not available) with the Inmate Grievance Resolution Committee ("IGRC").[1]  The IGRC, composed of fellow inmates and prison officials, must convene a hearing within seven working days, and issue a written decision within two days of the hearing.  The inmate then has four days to appeal the IGRC decision to the superintendent of the facility, who must respond within ten days and must provide "simple directions" on how to appeal to the next level, the Central Office Review Committee ("CORC").  The inmate's final opportunity for resolution of his grievance is to appeal to CORC within four working days of the superintendent's decision.  The CORC then has 20 working days to render a decision.  7 N.Y.C.R.R. § 701.7(c)(4).

DOCS also had an informal grievance process where, as here, the complaint arises from alleged staff harassment.  Id. at § 701.11; Perez v. Blot, 195 F. Supp. 2d 539, 543 (S.D.N.Y. 2002).  The inmate "should first report" the incident to the employee's supervisor.  N.Y. Comp. Codes R. & Regs., tit. 7, § 701.11(b)(1).  The allegation is then assigned a grievance calendar number and forwarded to the Superintendent.  Id. at §701.11(b)(2).  The Superintendent then must determine whether the allegations in the grievance, if true, would represent a bona fide case.  Id. at § 701.11(b)(3).  If not found to be a bona fide case, the Superintendent refers the complaint back to the Inmate Grievance Resolution Committee (IGRC) for review.  Id. at §701.11(b)(3). If determined a bona fide case, the Superintendent may initiate an in-house investigation or request an investigation by the Inspector General's Office.  Id. at § 701.11(b)(4).  The Superintendent has twelve business days to determine the grievance.  Id. at § 701.11(b)(5).  If the Superintendent replies, the inmate may appeal to the

---

[1] The inmate has fourteen days from the date of the incident complained of to file a complaint, but "mitigating circumstances" may toll the deadline.  7 N.Y.C.R.R. § 701.7(a)(1).

Central Office Review Committee (CORC) within four days of receiving the response. Id. at §701.11(b)(7). "[R]esolution of a grievance through informal channels satisfies the exhaustion requirement." Gadson v. Goord, No. 98-CV-1224, 2002 WL 982393, at *3 (N.D.N.Y. May 10, 2002) (citing Marvin v. Goord, 255 F.3d 40, 43 n.3 (2d Cir. 2001)

Under the §701.1 formal grievance procedure, Smith failed to exhaust all administrative remedies. N.Y. Comp. Codes R. & Regs., tit 7, § 701. Smith states he filed a formal grievance but ". . . then followed the expedited less formal grievance procedure for 'harassment' described in 7 N.Y. Comp. Codes R. & Reg., tit 7, §701.11." Pl. Aff. (Docket No. 127) at ¶ 1. The record does not indicate that the IGRC met to hear Smith's complaint or that Smith appealed the IGRC decision to the superintendent of the facility. Smith also made no appeal to CORC. See Pl. Aff. (Docket No. 89) at ¶ 67 (indicating he never appealed to the IGRC or CORC); Arthur Aff. (Docket No. 91) at Ex. P (letter from DOCS to Smith stating DOCS had no grievance request forms from Smith); Seaman Aff. (Docket No. 128) at Ex. A and B (stating Inspector General's Office has no records of investigation of alleged assault of Smith on March 18, 1998). Therefore, Smith never exhausted the administrative remedies of the formal inmate grievance program.

Smith also did not properly follow the regulations governing the informal grievance process of §701.11. First, Smith did not complain of the alleged excessive use of force to the supervisor of Mintzner or Yando as he should have under § 701.11(b)(1). Although, Petitioner wrote letters to the Superintendent on April 3 and 13, 1998, letters to the Superintendent do not satisfy the Inmate Grievance Program or exhaustion requirement. See, e.g., Houze v. Segrra, 217 F.Supp. 2d 394, 397 (S.D.N.Y. 2002); Nelson v. Rodas, 01-CV-7887, 2002 WL 31075804, at *3 (S.D.N.Y. 2002); Saunders v. Goord, 98-CV-8501, 2002

WL 1751341 at *3 (S.D.N.Y. 2002). Second, Smith did not appeal Senkowski's April 16, 1998 letter regarding the findings of his investigation to CORC as required by § 701.11(b)(7). Plaintiff's March 23, 1998 letter to Commissioner Goord cannot be seen as an appeal because it preceded the Superintendent's April 16, 1998 decision. The failure to appeal to CORC establishes that Smith failed to exhaust his administrative remedies. McNair v. Sgt. Jones, No 01-CV-3253, 2002 WL 31082948, at *8 (S.D.N.Y. 2002).

### b. Whether Plaintiff's Failure to Exhaust Remedies Could be Justified or Excused

"While the PLRA's exhaustion requirement is 'mandantory,'" Porter, 534 U.S. at 524, the Second Circuit has held that "certain caveats apply." Giano, 380 F.3d at 677. These three caveats occur when "1) administrative remedies are not available to the prisoner; 2) defendants have waived the failure to exhaust or have acted in such a way to estop them from raising the defense;" or 3) special circumstances justify a prisoner's failure to comply with the administrative procedural requirements. Ruggiero v. County of Orange, 467 F.3d 170, at 176 (2d Cir. 2006) (citing Hemphill, 380 F.3d at 686).[2]

Under the Second Circuit's inquiry, a court must first determine whether administrative remedies were available to the prisoner. Hemphill, 380 F.3d at 686. This is an objective test:

---

[2] Courts within the Circuit have questioned what effect the Supreme Court's decision in Woodford that requires "proper exhaustion" will have on the three-step Hemphill inquiry. The Second Circuit has not addressed the issue. See Ruggiero, 467 F.3d at 175-76 (declining to "determine what effect Woodford has on our case law in this area . . . because [plaintiff] could not have prevailed under our pre-Woodford case law"). Having acknowledged the tension, district courts have resolved to apply Hemphill to exhaustion claims until the Second Circuit instructs otherwise. See, e.g., Hargrove v. Riley, 04-CV-5857, 2007 WL 38900, at *8, n. 13 (E.D.N.Y. Jan. 31, 2007) (acknowledging that Woodford and Hemphill may be in tension, but deciding exhaustion claims under Hemphill inquiry); Larkins v. Selsky, 04-CV-5900, 2006 WL 3548959, at *9, n.4 (S.D.N.Y. Dec. 6, 2006); Sloane v. Mazzuca, 04-CV-8266, 2006 WL 3096031, at *5 (S.D.N.Y. Oct. 31, 2006) ("Until such time as the Court of Appeals considers the impact of Woodford if any, on its prior rulings, this Court must follow the law of the Second Circuit. The Court will therefore apply the curent law of this circuit to the exhaustion claims."). Here, Smith does not prevail under Hemphill; therefore, there is no occasion to address the potential effect Woodford may have had on this case.

"that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." Id. at 688 (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)). To make this determination, "courts should be careful to look at the applicable set of grievance procedures." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004). Where a plaintiff is unaware of grievance procedures or did not understand them, a court may consider exhaustion unavailable. Ruggiero, 467 F.3d at 179. Exhaustion may also be considered unavailable where defendants' behavior prevents plaintiff from seeking administrative remedies. Hemphill, 380 F.3d at 686.

Administrative remedies were "available" to Smith. DOCS had both a formal and informal grievance procedure for resolving prisoner complaints of staff misconduct. Smith never claimed that formal or informal grievance procedures were unavailable to him. Smith wrote letters to the Superintendent. The Superintendent responded to Smith's letters and investigated his allegations of excessive force, including sending Lt. Brown to interview Smith. Smith could have filed a formal complaint with the IGRC. Indeed, in his latest brief, he states that he did, but then abandoned the procedure.

In 1994, Smith had filed an appeal to CORC regarding his grievance about missing books and magazines. Egan Aff. (Docket No. 93) at ¶ 16 & Ex. A. Accordingly, he was aware of the grievance procedures and his right to appeal any grievance denial to CORC.

Under the second step of the inquiry, the court must ask whether Defendants are estopped from raising exhaustion as a defense. In particular, "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may

estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Hemphill, 380 F.3d at 686 (internal citations omitted).

Here, Smith, has not made any statements that would permit a finding that Defendants waived the right to raise the defense. Defendants first raised the PLRA's exhaustion requirement as an affirmative defense. Defendants raised it again in their second motion for summary judgment. Thus, Defendants are not estopped from raising the affirmative defense now. See, e.g., Sloane 2006 WL 3096031, at *8.

Smith contends that he complained of Defendants' excessive use of force to Lt. Vann who changed Smith's story and did not report the complaint to the Superintendent. Therefore, Smith argues that Defendants should be estopped from raising non-exhaustion as a defense. Smith, however, does not assert that Lt. Vann or any of the officers took affirmative steps to prevent him from following the grievance procedures. There is insufficient evidence that Defendants threatened Smith or engaged in other conduct that prevented him from exhausting available administrative remedies. Cf. Ziemba v. Wezner, 366 F.3d 161, 162 (2d Cir. 2004) (holding defendants were estopped from asserting non-exhaustion where defendants beat, threatened, denied grievance forms, and prevented inmate from following grievance procedures); Hemphill, 380 F.3d at 687 (holding defendants were estopped from asserting non-exhaustion because the defendants threatened to retaliate if the plaintiff filed or attempted to file a grievance). Indeed, Smith wrote a number of letters to the Superintendents and DOCs Commissioners with no problems. Both inquired into Smith's complaints. Thus, Defendants are not estopped from raising a failure to exhaust defense.

The court must next "consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" Hemphill, 380 F.3d at 688 (quoting Giano, 380 F.3d at 676). In Giano, plaintiff's reasonable interpretation of ambiguous DOCS regulations differing from prison official's interpretation constituted a "special circumstance." Giano, 380 F.3d at 676-77 (plaintiff reasonably interpreted DOCS regulations to preclude the filing of a grievance on matters related to disciplinary hearings). In Hemphill, plaintiff's reasonable interpretation that writing directly to the Superintendent after receiving threats of retaliation from the defendants instead of informing the defendant's immediate supervisors was a "special circumstance." Hemphill, 380 F.3d at 689-90; see also Rivera v. Pataki, No. 04-CV-1286, 2005 U.S. Dist. LEXIS 2747, at *41-42 (S.D.N.Y. Feb. 7, 2005) (holding special circumstance where prison officials told inmate that no remedy could occur at the facility level). In Rodriguez, the prisoner's reasonable belief that he did not have to exhaust administrative remedies for a complaint arising from a single circumstance rather than general prison condition excused complete exhaustion. Rodriguez v. Westchester County Jail Correctional Dept., 372 F.3d 485, 487.

The special circumstances under Giano and Hemphill are distinguishable from this case. Smith did not rely on any provisions of the DOCS regulations in his decision not to exhaust remedies. Therefore, the special circumstances identified in Giano do not exist in this case. Hemphill is more analogous to this case. Like Hemphill, Smith wrote directly to the Superintendent, skipping the first level of the grievance procedure. Smith never alleged that Defendants threatened to retaliate if he pursued administrative remedies. He now claims that prison officials attempted to "cover up" their deeds. However, Superintended Senkowski

conducted an investigation of Smith's claim on April 14, 1998. He even sent Smith a letter stating his findings. Although Superintendent Senkowski did not inform Smith that he had a right to appeal to CORC, Smith was aware of his ability to appeal based on his prior familiarity with the grievance procedure. Egan Aff. (Docket No. 93) at ¶ 16 & Ex. A.

Smith also contends that he reasonably believed that he did not have to exhaust administrative remedies for a complaint arising from the single episode of the use of excessive force. This reasonable belief, Smith argues, should excuse his failure to exhaust administrative remedies as the court held in Rodriguez. Rodriguez is distinguishable from this case. In Rodriguez, the plaintiff was exempt from exhaustion because his incorrect understanding of the PLRA that he did not have to exhaust claims of excessive force was reasonable. Rodriguez, 372 F.3d at 487. There is insufficient evidence in the record to indicate that Smith believed he did not have to exhaust administrative remedies for a single episode of the use of force. This is evidenced by the fact that Smith claims he did file a formal grievance and that he pursued the informal grievance procedure.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that the special circumstances enunciated in Giano v. Goord, 380 F.3d 670, Hemphill v. State of New York, 380 F.3d 680, and Rodriguez v. Westchester County Jail, 372 F.3d 485 do not apply. Plaintiff has failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). Therefore, Defendants' motion for summary judgment is GRANTED and Plaintiff's complaint is DISMISSED.

   IT IS SO ORDERED.

Dated: February 23, 2007

/s/ Thomas J. McAvoy
Thomas J. McAvoy
Senior, U.S. District Judge

- 12 -